Good morning, everyone. Welcome to the Ninth Circuit. We'll call the cases in the order on the day sheet, but we only actually have one case for argument. So we have a number of submitted cases that I'll go through now. The first case is Shivdasani v. Holder. The second is Brown v. Baker. Then we have Elliott v. Williams. Next is Jones v. Las Vegas Metropolitan Police Department. And then Van Dusen v. Swift Transportation Company. Those are all submitted today. And our only case for argument is United States v. Gomez, Castro, and Fuentes. The total amount of time for argument is indicated on the clock. And so when your time is up, the red light will go on. And if you want to reserve any time for rebuttal, then monitor the clock and stop talking before the red light goes on. If you tell me you want to reserve time, I'll try to remind you. So, Counselor, you may begin. Good morning, police and court. I'm Frank McCabe, and I represent Marco Gomez. And I believe I'd take a total of about five minutes, and I'd like to reserve a minute or so for rebuttal. Are you dividing time? We are dividing time, yes. And how are you dividing it? You're taking five minutes, did you say? Yes. And Ms. Pugalis, I think, will follow me and take five minutes. And Mr. Ballas has advised us that he may or may not – he may just submit the matter, depending on the questioning and what we say. Okay. And you have 15 minutes total, so please watch the clock. That's my understanding. Thank you. I'll try to be careful not to usurp the time of my colleagues. Great. Thanks. In fact, I really only want to argue one of the arguments in my briefs. And that's the first argument that there was an extreme – it's regarding the extreme lack of youthful guidance downward departure. I'm not saying that the Court had to grant that and had to agree with Mr. Gomez and agree with the probation officer who recommended that reduction as well. But what I'm saying is the Court abused its discretion the way it considered that request. The Court did not look at the merits of the request. They did – the Court did not look at Mr. Gomez's situation individually. What the Court did was categorically reject the concept of the departure itself. Could I just – Go ahead. Go ahead. You know the difficulty I had, and it's just a third of the Court, so you might be safe. The difficulty I had is you consider, and the language that the Court used could be interpreted by somebody. He considered it. He just didn't give it much weight. Well, I think he considered it when he said, basically, I don't believe in this departure. He said – It's given too much weight. Right. It's something that's overworked and overused. It's overworked terms, yes. And I think it's given too much credit as something that's overdone. Right. But he said that in general. As to anybody that might raise that variance, he did not – He also said that it applies sometimes. It may well apply in certain cases. But he never said – Did he say that? I – he may have, because he – He said it's overdone. I didn't recall that. He said it's overdone, and, you know, he's looking at people like Mr. Gomez, who's been to State prison already and such, 35 years of age, I think, something like that. That's about right. And he's youthful. I think the Court is probably concerned about youth – lack of youthful guidance, which the Guideline Commission thinks is worthless, but that's neither here nor there. He's just concerned about it, that it's overused. He's got a person 35 years of age who's in West Rafaelia. He's been to State prison already. How long does this go on? When the guy is 60? When he – he's also got youthful lack of – Well, if he would have said that, said what Your Honor said, I probably wouldn't be here arguing it. But my interpretation of what he said was, is that he's basically rejecting that. He's – he's saying, you know, people that argue extreme lack of youthful guidance, then there are people that have an exemplary history, and they want their conduct to be considered in the current situation. So the quote that I have, and maybe you can explain why this isn't enough. I think Judge Fernandez was alluding to it. It says, and I just think that while in some cases lack of youthful guidance, yes, it may be a ground for consideration in favor of defendant. On the other hand, a lot of people before the Court that didn't have a good upbringing and they don't resort to crime, that's at ER 96. So – so he – the district court expressly said it may be a ground for consideration in some cases, but it wasn't in this case. So why – why wasn't that enough to – to constitute a consideration and just giving it no weight in this case? Well, I think Your Honor's interpretation of it is a little different from mine. I mean, I – I look at it as being, I'm just not going to look at this. Not necessarily in Mr. Gomez's case, but I just don't think it's overworked, it's overused. I mean, he doesn't look at Mr. Gomez individually. Could I just clarify one thing? Are you arguing lack of youthful guidance as part of the Guidelines calculation or as part of the 3553A factors? Well, I think both. It's certainly part of the Guidelines calculation because if the Court would have Is there anything in the Guidelines that would allow the district court to take that into consideration? Which – which portion of the Guidelines are you relying on? Well, I can't give you an exact number, but I do know that the probation officer recommended that this – that the one-point downward departure be applied here. And that's – the point I'm saying is – Well, the Guidelines commission said it's not relevant. Well, the – but the Court, the Ninth Circuit, has said that an extreme lack of youthful guidance is relevant. And there are Ninth Circuit cases that I have cited in my brief. Basically, what I'm saying is the Court, as the Court is aware, asked Mr. Gomez, he went over the upper range of the applicable Guidelines, and he spent a long, long opinion in determining the Guidelines for each defendant that he was sentencing. If this had been allowed, the upper range of the Guideline, applicable Guidelines, would have been 262 months, which would have been three years below the sentence that the Court actually gave Mr. Gomez.  So just so that I understand, there's a departure provision in the Guidelines that says you cannot look at youthful – lack of youthful guidance, but there's Ninth Circuit cases saying in extraordinary cases you could, and your position is this is an extraordinary case. Is that correct? That's my position. But my position is not that the Court had to or was required to give that one-point downward departure. What I'm saying is the Court was required to look at Mr. Gomez's case individually. And there are, of course, a number of Supreme Court cases that say that you – this is Gall, Kuhn – you need to consider every convicted person as an individual. And the way I interpreted the remarks of the Court is that this is overused, it's overworked, I'm not going to pay any attention to this. That they did not look at Mr. Gomez's situation individually, as the Supreme Court says the sentencing judgment would do. Thank you very much. Pagalus, I'm here on behalf of Benjamin Santos Castro. I have very little to say in my opening. I hope to reserve most of my time on rebuttal. I only want to strongly emphasize to this panel the mistake that was made in the application of the aggravated role enhancement as to Mr. Santos Castro. The cases, as specifically I refer the Court to United States v. Harper, make it quite clear that the substantial basis on which the Court applied this, which is that Mr. Santos Castro was the human resources guy in the group, that he was there to settle political disputes within the organization, he was there to handle personal confrontations and problems that arose, that he did not have involvement in the drug activity, at least not in the sense of being a supervisor, knowing what was going on, receiving the drugs, distributing them, organizing the deals, is right there enough to say he wasn't a leader. He wasn't a manager of drug trafficking activity, which is what's required. What do we do with Mr. Diaz's testimony? Because the district court expressly said, Mr. Diaz, I find Mr. Diaz to be credible. And Mr. Diaz said that Castro had a leadership role and nine members of the gang reported to him. Why isn't that enough to support the leadership role finding? Because everything Mr. Diaz said was a ultimate conclusion that he was a leader and a manager. It had to be supported by specific facts. That's what Harper says. That's what Harper directs this Court to use as a standard. Mr. Diaz didn't give any specific facts. So he testified. Nine people reported to Mr. Castro. Was his observation, his understanding, that was the factual determination that the district court relied on. That's not a legal conclusion. That's just his statement or description of the organization structure, isn't it? Okay. That's the structure. Just for instance, as the structure in the courts is, we have trial courts, and then we have appellate courts, and then we have supreme courts. The fact that those courts are there doesn't mean much if nothing's happening in them. This was the structure of regimental units. It was. There's no question. Everyone wanted Mr. Santos Castro to be the regimental commander. The people above him gave him the title. The people above him put him there. They told the people below him. That's who he was. They needed to do what he said. Of course, that was Mr. Diaz's understanding. But there wasn't one whit of evidence that he ever did anything to supervise or manage any drug deal or drug deals overall. And, in fact, Mr. Diaz said he wasn't involved in that. Mr. Diaz himself took him out of that. So what sort of evidence, in your view, would be necessary to show his leadership role? The same sort of evidence that went in on Gomez and Fuentes, particular runners who did stuff, that they gave them money, that they sent them out to deliver, that they went with them to meet with the higher-ups, that they sent them off with cash, that they received cash. So some evidence that he was involved in illegal enterprise, is that your position? Yes. Specific facts. That's what the case law says. It says human resources, even a very important role. I'll give you that Mr. Santos Castro, by that description, had an important role. But he didn't have a leadership role. They wanted him to. He wanted to. But the guidelines don't allow people to get an extra five years in prison because they want to do something. You know what? Does it pose a problem? Certain questions are for the trier fact. So we have to look to see, you can tell me, whether there was any basis for the trier fact to make a conclusion, reach the conclusion that he was a leader. And I understand the arguments you're making. I think I understand the arguments you're making. But what I don't understand is what's lacking? And that's what somebody asked you. What I — Specifically, more do we need to find in this record? In order to impose that extra five years, the district court had to find that Mr. Santos Castro was involved in supervising and organizing drug deals. Every Ninth Circuit case that I included in our brief talks about — No, I understand that part of it. But he had the title. Other people have said he was the leader on this record. Only the people above him. They don't know. They weren't on the street. They weren't here. They didn't see the day-to-day business. It wasn't intercepted on the wiretap. I'm saying — But I think that's a question for the trier fact. I have to respectfully disagree. I think these were conclusions unsupported by facts, by the kinds of facts that consistent Ninth Circuit authority requires before you impose this really hefty additional. He just never made it. He was a wannabe. The people above him couldn't make anyone listen to him. He was — he simply wasn't in a leadership position. And nothing in the record supports that except conclusions. And if that were enough, we're in big trouble. If all the judges have to do, all the U.S. Attorney has to do is put some witness on the stand who says, oh, yeah, he was a leader. These were the people under him. And nothing else except he was handling the organization's confrontations, issues, problems within the group. And I'm saying that U.S. v. Harper says that doesn't qualify. And the judge never found more than that. That's all the judge ever found. Harper says it's not enough. Ginsburg. You have about a minute and a few seconds. I'm going to reserve it. Thank you, Your Honor. John Ballas on behalf of Edward Fuentes. I think my arguments are adequately set forth in my briefs, and I was going to reserve the time for my colleagues' rebuttal unless the Court has any questions. No. Good morning, Your Honors. My name is Jason Hitt. I'm from the U.S. Attorney's Office. I'm representing the United States in this matter. In this case, Your Honors, the district court did everything right. It gave very serious thought and attention to a very serious case. Before imposing significant sentences, the district court held a three-day evidentiary hearing. It took pains to issue a 53-page written order after carefully reading a voluminous briefing from all three defendants, and then actually created what the Court has in the record, a bifurcated sentencing proceeding in which the guidelines analysis was handled in the written order, and then the sentencing hearing, which the Court has in the excerpts of record, was actually designed to focus on Section 3553. The Court had signaled that to the parties in setting up, ultimately, what took about eight or nine months from start to finish for the sentencing proceeding for these defendants. I just wanted to briefly respond, really, just to the comments made by Counsel for Gomez. I think Judge Ferris has it exactly right. The Court did not categorically reject the argument about youthful guidance. The Court considered it and, as Your Honors have pointed out, simply did not feel that it applied to Mr. Gomez. And it also opened the door that in other cases it may apply. But at this point, the judge found that that factor, that argument, really was a wash as to Gomez. And ultimately, the Court suggested that the farther the argument was made, the person may be so unredeemed that the Section 3553 factor of protecting the public starts to come into play if the person is unredeemable. As to Defendant Castro, the only comment there is I think what's important to emphasize is that on review, the District Court's factual findings, as Judge Ferris pointed out, are entitled to deference. The Court made very detailed findings about its finding on leadership role as to what it was based upon. That's at Excerpts of Record 37. And any error has not been identified in the application of the leadership role. And under the clear error standard, I think the District Court's finding as to Castro should be affirmed. The District Court, one of the things the District Court or the arguments that's made by Mr. Castro is that the District Court didn't sufficiently consider criminal history as mitigation. And although the District Court went into a detailed analysis of the criminal history to figure out the criminal history number, did the District Court sufficiently consider the mitigation aspect of the criminal history? I think, Your Honor, the District Court's sentencing proceeding as to his criminal history, there really, the way that the sentencing proceeding went, Castro's lawyer really didn't urge much more of the criminal history during that proceeding. There was the youthful guidance argument. But the District Court incorporated its findings from the order and had found already, and I think the order is very clear in articulating this was a very serious criminal history. It included a brutal stabbing in which they had kidnapped a victim, stabbed him, left him for dead in San Francisco while calling him a snitch. I think that issue as to whether there was mitigation essentially was kind of answered by the order. And then the focus of the sentencing hearing, which the District Court addressed and engaged in, was whether youthful guidance would be a basis to depart. And I should mention that the Court had an interesting question for counsel, and I think it's clear that, as all Your Honors have pointed out, the guidelines do not provide youthful guidance departure. So departure being a guideline-based way of reducing a sentence does not exist. In fact, it's prohibited. Case law has given the gloss of this is an adequate basis. So I think the only way it can come into sentencing, technically speaking, is under 3553 as a 3553 factor. And whether we say, well, reduce it by one level or give him 30 months off, however it's phrased, the basis for youthful departure, youthful guidance, is really not a guideline-based argument. It's Section 3553. And the Court treated it appropriately as such and did not commit error. And, Mr. Fuentes, the sentence was substantially above the guidelines range, is my understanding. And the Supreme Court has instructed us that there needs to be a sufficient explanation of why there's such a substantial upward variance. How extensive was the district court's analysis of better explanation? It didn't seem like there was too much to me. Your Honor, I think this Court can be satisfied that the district court had a reasoned basis for exercising its legal decision-making authority. The sentence of 240 months for Mr. Fuentes was 30 months above the high end of his guidelines. So 210 was the top, and the Court imposed 240 months. What was important to the Court, and I think what is adequately covered for this Court to review in the sentencing appeal transcript, is you had a number of factors, and I'll just list them quickly, that the circumstances of the effects were mentioned by the Court. This was a long-running, sophisticated, organized crime group. The history and characteristics of the defendant, those were specifically addressed as to Mr. Fuentes. And essentially the Court noted that he had been given a chance at life outside of prison after his prior conviction for murder, was reduced to manslaughter, and immediately jumped back into the organized crime lifestyle of the Nuestra Familia. There was a very significant discussion by the Court about unwarranted disparities. Mr. Fuentes' lawyer had made significant arguments, as well as the other lawyers. And what the Court pointed out was the non-leadership defendants, by and large, received much lower sentences, and then the leadership defendants, what may not be clear to this Court, because we've all lived with the cases, there were leadership defendants with higher sentences, three that went to trial, all received higher sentences after trial. The two that were most relevant in the comparison, according to the Court's sentencing comments, were Defendant Caraceo, who entered a negotiated plea for 25 years. He had a two-level leadership role for the Oakland Regiment, and Defendant Ocampo, who was kind of the purported rival of Castro for the San Francisco Regiment, he entered into a negotiated plea with a two-level leadership role and received a sentence of 336 months. So that unwarranted disparity aspect was very important to the Court in its discussion. I think that's adequately revealed by the record. And finally, the fourth factor that this Court can be assured the District Court had a reasoned basis, was to protect the public from future crimes. And the Court made pains, I believe, in addressing Mr. Ballas during the sentencing, that his understanding of Diaz's testimony and his having presided over the various trials, the organization is a lifelong commitment and it functions behind prison walls, and a lesser sentence may not assure the public the protection it needs from future crimes once they're released from prison and continue to engage in the crimes on behalf of the group. And with that, I would submit, unless the Court has additional questions. Ginsburg. Thank you. Do you have a minute and a half for rebuttal? I'll try to be much shorter than a minute and a half. I think the argument that the judge gave to protect the public may be under these circumstances overworked and overused. What Mr. Long, defense counsel at trial, was asking for was not probation or five years or ten years or anything like that. We're only suggesting that something slightly shorter than the 25 years that he got. If he were to get, for example, 22 years or 20 years, he'd still be well into his 50s when he's released, and statistics show that criminality is substantially reduced on someone at that age. The district and Mr. Gomez is like Mr. Fuentes in that the sentence was above the upper limit of the guidelines, although not as much as Mr. Fuentes. And I would suggest that the district court, in a 53-page opinion or recommendation or sentencing memo, followed the guidelines and talked about the guidelines, and then he sentenced Mr. Gomez above the guidelines and gave very little reason for that, if any. And I would suggest that the sentence is not reasonable, and for the reasons that I gave in my brief, it should be remanded for the court to look at these  What, in your opinion, would be the language we would use? What would we say? Well, I think there are — that's a difficult question for me, because I'm not — I'm not as skilled as you judges in writing opinions. The reason I ask you that is because somebody could conclude on this record, if we sent it back, he'd just do it again. There's something you'd want us to tell him, so that Well, I guess what I'd like to say, a couple of the things are that the court must look and give specific reasons for not applying the extraordinary youthful lack of discretion circumstance, and rather than give a broad-based reason that it was overworked and overused, and to give additional reasons as to why he sentenced Mr. Gomez above the guidelines, which he didn't. He talked about sentencing guidelines in his 53-page memorandum, and then he went to sentence Mr. Gomez, and he sentenced him almost a year above the guidelines, and there really was no explanation as to why he did that, in my opinion. Any other questions? 30 seconds, I promise. All right. Okay. I just urge the Court, please, to review United States v. Harper. I believe it's dispositive, and to look at the opening brief, pages 13 to 14, and the excerpts of record that are cited therein that show the district court's rulings. This enhancement was based on the court's conclusion that Mr. Santos-Castro's job was to keep harmony in the group. U.S. v. Harper says that's not leadership. 3b.1.1 doesn't apply for that, even if it's an important role. Thank you. All right. And with that, this case is submitted, and we're adjourned for the day. Thank you.
judges: Farris, Fernandez, Ikuta